**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **KIMBERLY BLACK,** | ) | **CASE NO 5:11CV2770** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MAGISTRATE JUDGE GREG WHITE** |
| | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY ADMINISTRATION** | ) | |
| | ) | |
| **Defendant.** | ) | **MEMORANDUM OPINION & ORDER** |

Plaintiff Kimberly Black ("Black") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Black's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is affirmed.

## I.  Procedural History

On December 29, 2008, Black filed an application for POD, DIB, and SSI alleging a disability onset date of January 2, 2003, and claiming that she was disabled due to chronic pulmonary insufficiency and affective disorders.  (Tr. 82-83.)  Her application was denied both initially and upon reconsideration.

On November 15, 2010, an Administrative Law Judge ("ALJ") held a hearing during which Black, represented by counsel, and an impartial vocational expert ("VE"), testified.  At the hearing, Black amended the alleged onset date to December 17, 2008, which effectively withdrew her Title II application (POD and DIB).  (Tr. 15.)  On November 22, 2010, the ALJ found Black was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  The ALJ's decision became the final decision of the Commissioner

when the Appeals Council denied further review.

## II. Evidence

### Personal and Vocational Evidence

Age forty-nine at the time of amended alleged onset date, Black is a "younger" person under social security regulations.[1] *See* 20 C.F.R. § 416.963(c). (Tr. 29.) Black has at least a high school education and past relevant work as a medical billing clerk and fast food manager. (Tr. 28, 29.)

### Hearing Testimony

At the hearing, Black testified as follows:

- She attended some college, but did not graduate. (Tr. 50.)

- She last worked in early 2003. (Tr. 51.) She was asked to leave because she spent too much time in the restroom with diarrhea and pain. *Id.*

- She was incarcerated from December, 2005, until December, 2008 for credit card theft. (Tr. 48.)

- In 2008, while incarcerated, a rheumatology doctor from the Ohio State University Hospital prescribed a wheelchair due to her mixed connective tissue disease and osteoarthritis. (Tr. 53-55.) In 2009, her treating doctors at Mercy Medical also provided a statement indicating that a wheelchair was necessary. *Id.*

- She does not use a CPAP machine, but to improve her breathing, she has a hospital bed so she can be elevated while sleeping (Tr. 54.)

- A physical therapist visits her three times a week to work on strengthening her legs and arms. (Tr. 55.)

- She is unable to walk due to her heart and breathing problems. (Tr. 56.) Any type of exertion causes shortness of breath and chest pain. *Id.*

- Every two weeks she receives an injection from her pulmonary doctor to help with her COPD and breathing problems. (Tr. 56-57.)

- She stopped smoking in July, 2010. (Tr. 57.)

- She lives alone in an apartment in metropolitan housing. (Tr. 59.)

- Since May 2010, a home health aide helps her bathe, dress, prepare meals and clean. (Tr. 59-62.)

---

[1]At the time of the hearing, Black was fifty years old -- a person "closely approaching advanced age." 20 C.F.R. § 416.963(d). (Tr. 46.)

- She watches movies and plays with her six grandchildren who visit every day. (Tr. 60.)

- A typical day consists of resting in her hospital bed and being bathed by the home health aide.  (Tr. 60-61.)  Some days she does her physical therapy.  (Tr. 61.)  Sometimes she sits in the living room, watching television, with her legs propped up.  *Id*.  When her aide is not there, neighbors will stop by to help her.  *Id*.  She reads about one book a week.  (Tr. 61, 63.)  She used to sew, but is now unable to move her fingers.  *Id*.  She is able to prepare meals using the microwave and occasionally the stove.  (Tr. 62.)

- She does not attend meetings or religious services, and does not belong to any organizations.  (Tr. 62.)  A pastor visits her at home once a week.  (Tr. 63.)

- She weighs 216 pounds.  (Tr. 64.)

- She is right-handed.  *Id*.

- She is able to sit about forty-five minutes at a time during a normal day and about four hours for the entire day.  (Tr. 65.)  She is unable to stand or walk during a typical day.  *Id*.  She is able to lift a half gallon of milk, but not a gallon.  *Id*.

- Due to swelling and numbness in her fingers and hands, she has difficulty grasping objects as it is hard to move her fingers.  (Tr. 66.)

- She has chronic diarrhea and needs to use the restroom often.[2]  *Id*.

- She interacts fairly well with others as she is "personable" and a "nice person."  (Tr. 68.)

After the VE described Black's past relevant work as a medical billing clerk (semi-skilled, sedentary position) and a fast food manager (skilled, light position), the ALJ, indicating that he was relying on Black's treating psychiatrist's opinion, posed the following hypothetical:

> This hypothetical has the claimant at a light exertional level; never climbing ladders, ropes, or scaffolds; occasionally climbing ramps or stairs; occasionally balancing, stooping, kneeling, crouching, crawling; frequently reaching with the right upper extremity; avoiding concentrated exposure to extreme cold, extreme heat, wetness or humidity; exposure to environmental irritants such as fumes, odors, dusts, and gases; avoiding, again, concentrated exposure to poorly ventilated areas, chemicals, moving machinery, and unprotected heights.  Also, the work the claimant can perform is limited to simple, routine, and repetitive tasks performed in a work environment free of fast paced production requirements, involving only simple, work related decisions, and routine work place changes.  She would have superficial and no direct interaction with the public, and only occasional interaction with coworkers.  Given this hypothetical, could the claimant perform any of her past relevant work, as actually or generally performed?

---

[2]During the hearing, the ALJ recessed so Black could use the restroom.  (Tr. 66-67.)

3

(Tr. 73.)  The VE testified that the hypothetical person would not be able to perform Black's past work as those jobs go beyond "simple, routine, repetitive tasks."  *Id.*

The ALJ posed a second hypothetical as follows:

> Assuming a hypothetical individual with the claimant's age, which would be a younger individual, although I know she's gonna pass over, but we're gonna say a younger individual and an older individual – I'm sorry, a younger individual and a closely approaching an individual of advanced age, with a high school education, the claimant's past relevant work, and the hypothetical residual functional capacity previously provided, are there other jobs in the national and regional economy in which the claimant can perform?

(Tr. 74.)  The VE testified that this hypothetical person would be able to perform light, unskilled positions including inspector/hand packager, electronics worker, and assembler.  *Id.*  The VE also testified that the hypothetical person would be able to perform sedentary, unskilled positions, such as document preparer, assembler of electrical appliance components, and bench inspector.  (Tr. 75.)

After counsel questioned whether sedentary positions would still be available if the hypothetical person was prescribed a wheelchair, the VE testified that for most employers, it should have no effect on the jobs available.[3]  (Tr. 76-77.)

Lastly, the ALJ asked the VE what jobs would be available if the hypothetical person had to use the restroom six to eight times during a workday.  (Tr. 77-78.)  The VE responded that no work would be available.  *Id.*

### III.  Standard for Disability

A claimant is entitled to receive SSI benefits when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe

---

[3]The VE indicated that perhaps a small employer may not have wheelchair accessible restrooms.  (Tr. 77.)

4

impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

The ALJ found Black established medically determinable, severe impairments, due to chronic obstructive pulmonary disease ("COPD"), obesity, fibromyalgia, Raynaud's syndrome, depression, post-traumatic stress disorder, personality disorder with antisocial and paranoid features and somatoform disorder; however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Black was found incapable of performing her past work activities, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Black was not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular

5

conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI. Analysis

Black contends the ALJ gave great weight to certain medical sources' opinions regarding both exertional and nonexertional limitations, yet failed to incorporate these restrictions in the hypothetical question. She, therefore, contends that the RFC determination was based upon unreliable evidence. (Doc. No. 14 at 13-18.) The Commissioner responds that the ALJ's decision is capable of meaningful review and includes proper discussion and weighing of the relevant medical opinions. (Doc. No. 15 at 11.)

The ALJ is charged with a duty to evaluate all of the medical opinions in the record and

6

resolve any conflicts that might appear. 20 C.F.R. § 416.927. As such, the ALJ will give each opinion the weight deemed appropriate based upon factors such as whether the physician examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings, and whether it is consistent with the entire record. 20 C.F.R. § 416.927(d)(2); SSR 96-2p. It is the responsibility of the ALJ alone, not a reviewing court, to weigh the medical evidence and resolve any conflicts that might appear. 20 C.F.R. § 416.927(d).

Furthermore, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 Fed. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 416.927(d)(2)). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[4]

Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a

---

[4] Pursuant to 20 C.F.R. § 416.927(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).

Opinions from agency medical sources are considered opinion evidence.  20 C.F.R. § 416.927(f).  The regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us."  20 C.F.R. § 416.927(f)(2)(ii).  More weight is generally placed on the opinions of examining medical sources than on those of non-examining medical sources.  *See* 20 C.F.R. § 416.927(d)(1).  However, the opinions of non-examining state agency medical consultants can, under some circumstances, be given significant weight.  *Hart v. Astrue*, 2009 WL 2485968, at *8 (S.D. Ohio Aug.5, 2009).  This occurs because nonexamining sources are viewed "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act."  SSR 96–6p, 1996 WL 374180.  Thus, the ALJ weighs the opinions of agency examining physicians and agency reviewing physicians under the same factors as treating physicians including weighing the supportability and consistency of the opinions, as well as the specialization of the physician.  *See* 20 C.F.R. § 416.972(d), (f).

The Sixth Circuit, however, has held that the regulation requiring an ALJ to provide good reasons for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of one examining physician's opinion over another.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006).  The *Kornecky* Court found that:

> While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that:
>
> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.  Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Id*.

Furthermore, it is well established that the plaintiff—and not the ALJ—has the burden to produce evidence in support of a disability claim.  *See, e.g., Wilson v. Comm'r of Soc. Sec*., 280 Fed. App'x. 456, 459 (6th Cir. May 29, 2008) (*citing* 20 C.F.R. § 404.1512(a)).  *See also Struthers v. Comm'r of Soc. Sec*., 101 F.3d 104 (table), 1999 WL 357818 at *2 (6th Cir. May 26, 1999) ("[I]t is the duty of the claimant, rather than the administrative law judge, to develop the record to the extent of providing evidence of mental impairment."); *Landsaw v. Sec'y of Health & Human Servs*., 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant.  20 C.F.R. §§ 416.912, 416.913(d)."); *cf. Wright–Hines v. Comm'r of Soc. Sec*., 597 F.3d 392, 396 (6th Cir. 2010) (although an "ALJ has an inquisitorial duty to seek clarification on material facts," a plaintiff, who is represented by counsel, must provide a "factual record" relating to the length of his employment when his past work was part of the record and was the basis of the initial decision to deny benefits).  *See also Hayes v. Astrue*, 2011 WL 901013, *5 (S.D. Ohio Feb. 14, 2011).

### *Exertional Impairments*

Regarding Black's exertional impairments, she initially argues that the ALJ disregarded a portion of her physical therapist's opinion (as to lifting, standing, and walking restrictions), even though the ALJ professed to give it "significant weight."  (Doc. No. 14 at 13-14.)  The Commissioner contends that Black's reliance upon the physical therapist's opinion is misplaced, as the regulations indicate that physical therapists are not "acceptable" medical sources.  *See* 20 C.F.R. §§ 416.902, 416.913(a).  *Id.*

Black's physical therapist, Brian Walker, completed a Medical Source Statement regarding her physical residual capacity on October 28, 2009, finding as follows: no lifting or carrying due to unsafe balance and poor left extremity strength; standing is possible, but requires assistance or an assistive device; never standing or walking during an 8-hour workday; rarely or never climbing, crouching, or kneeling; only occasional balancing, stooping, or crawling; and, only occasional reaching, handling, feeling, and fine and gross manipulation due to pain and swelling in fingers and wrist joints bilaterally.  (Tr. 1011-1012.)  Mr. Walker also stated that

Black required additional breaks and a sit-stand option.  *Id.*

> The ALJ discussed Mr. Walker's opinion as follows:
>
>> On October 28, 2009, Brian Walker, a physical therapist, opined that Ms. Black retains the residual functional capacity to lift and carry zero pounds.  In addition, she is able to stand, but requires assistance or an assistive device.  He indicated that sitting is not affected and this is her most comfortable position.  (43F)  He further opined that she is limited to rare or no climbing, crouching, and kneeling.  However, she can occasionally balance, stoop and crawl.  Likewise, she is limited to only occasional reaching, handling, feeling, fine and gross manipulation.  He also opined that she can rarely or never push or pull.  Further, she should not be exposed to heights.  Lastly, he opined that she would require more rest beyond normal breaks.  (43F, 44F/8-9)  The undersigned will give Mr. Walker's opinion no weight with respect to the amount of weight the [sic] Black is able to carry because it is not consistent with Ms. Black's own statements at the hearing and because it is not consistent with the medical record or other opinions in this matter.  However, the undersigned will give significant weight to the remainder of his opinion because it is consistent with the medical record and other opinions in this matter.

(Tr. 25-26.)

A physical therapist is an "other source," *see* 20 C.F.R. § 416.913(d)(1) and, as such, is entitled to consideration, but is not qualified to offer a medical diagnosis.[5]  Consequently, Mr. Walker's medical source statement is not entitled to controlling weight.  Additionally, Mr. Walker's opinion is not entitled to controlling weight or special significance because an RFC finding is not a medical opinion, but an administrative determination reserved to the Commissioner.  20 C.F.R. § 416.927(e)(2); *Figueroa v. Comm'r of Soc. Sec.*, Case No. 1:09cv2793, 2011 U.S. Dist. LEXIS 14057, at *25 (N.D. Ohio Jan. 27, 2011) (claimant's RFC finding is an administrative determination reserved for the Commissioner); *see also Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2011) (finding opinion by a physician on an issue reserved for Commissioner is not entitled to controlling weight or special significance).

Black also contends that the ALJ gave the opinion of Sam N. Ghoubrial, M.D., a consultative physician, significant weight, but then ignored it when presenting the hypothetical question and in formulating the RFC.  Specifically, Black asserts that Dr. Ghoubrial noted that she would have difficulty lifting and carrying objects and would be able to sit and stand for short

---

[5]Moreover, it appears Mr. Walker was not treating Black as he only performed a single evaluation in order to complete the assessment.

periods, implying that she could not sit/stand for long periods.  (Doc. No. 14 at 15.)  Dr. Ghoubrial evaluated Black on April 29, 2009, noting as follows:

> Based on my evaluation of this claimant, her objective findings do not really substantiate her physical exam.  Her strength is 5/5.  She refused to get on and off the exam table despite having motor strength of 5/5 in her upper and lower extremities.  I don't feel she would have any difficulty sitting, standing for short periods, handling objects, hearing, speaking, seeing or traveling.  I do feel she would have some difficulty lifting and carrying objects.

(Tr. 921.)

In May, 2009, a state agency physician reviewed the medical record, including Dr. Ghoubrial's findings, and concluded that Black could perform light exertional work with a need to avoid concentrated exposure to extreme cold, respiratory irritants and hazards, and climbing ladders, ropes, and scaffolds.  (Tr. 940-946.)  The state physician noted that Black did not have connective tissue disease, but was thought to have fibromyalgia.  (Tr. 946.)  In September, 2009, another state agency physician affirmed.  (Tr. 1003-1010.)  Both state agency physicians found Black's subjective complaints only partially credible.  (Tr. 946, 1010.)

An evaluation performed by David Richter, M.D., a rheumatologist, on November 23, 2009, supports the RFC determination.  Dr. Richter indicated that no prior medical records confirmed Black's reported history of multiple rheumatological disorders, his objective findings were minimal, and her rheumatological blood testing was negative.  (Tr. 1051-1053.)  Further, Dr. Richter observed normal muscle tone and strength.  *Id.*

The ALJ discussed the opinions of Dr. Ghoubrial and the state agency physicians as follows:

> On April 21, 2009, Ms. Black underwent a State consultative examination with Dr. Sam Ghoubrial.  At that examination, Ms. Black stated that she was unable to work predominantly because of chronic fatigue and pain in her legs and hips.  She further reported that she was diagnosed with mixed connective tissue disease and it appeared to Dr. Ghoubrial that it was very well managed.  She further reported that because of the connective tissue disorder she requires the use of a walker to ambulate and on occasion the use of a wheelchair (28F/6).  Upon examination, she showed normal motor functions in all extremities and normal strength, with the exception of limited range of motion in her right shoulder.  She did refuse to get on and off the exam table and was unable to do heel to toe walking.  Dr. Ghoubrial noted that, although Ms. Black uses a walker, she is nondependent.  (28F/9)  Based upon his evaluation, her objective findings do not really substantiate her physical exam.  Dr. Ghoubrial opined that Ms. Black would not have any difficulty sitting or standing for short periods, handling objects, hearing, speaking, seeing or traveling.

However, he did note that she would have some difficulty lifting and carrying objects. (28F/1) The undersigned will give the opinion of Dr. Ghoubrial significant weight because it is based upon and consistent with his examination findings as well as the record as a whole including the minimal objective clinical and diagnostic findings.

* * *

On May 7, 2009, at the initial stage, and on September 25, 2009, at the reconsideration stage, the State Agency concluded that Ms. Black retained the residual functional capacity to perform light work. In addition, she is able to sit, stand and walk for 6 hours out of an 8-hour workday. However, she should never use ladders, ropes or scaffolds. She should only occasionally stoop and she is limited in reaching with her right upper extremity. Lastly, she should avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases, poor ventilations and hazards, such as machinery and heights. (30F, 41F) The undersigned will give the opinions of these highly qualified physicians and experts in Social Security disability evaluations significant weight because they had the benefit of Ms. Black's longitudinal record and because their opinions are consistent with not only the medical record, but with opinions in the record.

(Tr. 23-25.)

A hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). In forming a hypothetical question to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible. *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*citing Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993)). However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence. *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).

Here, the hypothetical question specifically restricted the individual to light work. The regulations define light work as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). It further defines a position as light when "it requires a good deal of walking or standing . . . ." *Id.* The ALJ relied upon the state agency physicians' assessment that Black was capable of such. The ALJ also specifically discredited that part of Mr. Walker's opinion regarding Black's ability to lift and carry. Even though Dr. Ghoubrial, who examined Black only once, found that she had

12

"some difficulty lifting and carrying objects" and that she would have difficulty sitting or standing for long periods, the hypothetical question accurately portrayed Black's physical restrictions. The ALJ was permitted to credit some parts of the opinion evidence and reject others. *See Kornecky*, 167 Fed. App'x at 508. More importantly, Black produced no evidence from treating physicians to support her alleged disability.

As to the RFC determination, although social security ruling "SSR" 96-8p requires that the RFC finding must "assess [claimant's] work-related abilities on a function-by-function basis," there is case law that the ruling "does not require ALJs to produce such a detailed statement in writing." *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. App'x 542, 547–48 (6th Cir. 2002) (*quoting Bencivengo v. Comm'r of Soc. Sec.*, No. 00–1995, 2000 WL 1929759 (3d Cir. Dec.19, 2000)) ("Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing").

The ALJ formulated the RFC regarding Black's physical restrictions as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 29 CFR 416.967(b) except the claimant cannot climb ladders, ropes or scaffolds with only occasional climbing of ramps or stairs. In addition, the claimant is limited to only occasional balancing, stooping, kneeling, crouching and crawling. The claimant is limited to frequent reaching with the right upper extremity.

(Tr. 21.)

In formulating the RFC, there was substantial evidence that Black was capable of lifting/carrying twenty pounds occasionally and ten pounds frequently. More importantly, Black has not presented any evidence from a treating physician establishing the limitations she alleges were omitted from the hypothetical question.[6] The ALJ's decision as to Black's physical limitations is capable of meaningful review.

The ALJ also considered Black's credibility. A claimant's subjective statements concerning her symptoms are not enough to establish disability. *See* SSR 96-7p, Introduction. When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step process

---

[6]Black presents new evidence after the hearing date, which, as explained later, is not properly before the Court.

13

for evaluating these symptoms.  First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment.  Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms."  *Id.*  If these claims are not substantiated by the medical record, the ALJ must make a credibility determination of the individual's statements based on the entire case record.  *Id.*  Credibility determinations regarding a claimant's subjective complaints rest with the ALJ.  *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).  The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly.  *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).  Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reason for the weight."  SSR 96-7p, Purpose section; *see also Felisky v. Bowen,* 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"); *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005) (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.")

To determine credibility, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record.  *See* SSR 96-7p, Purpose.  Beyond medical evidence, there are seven factors that the ALJ should consider.[7]  The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence.  *See Cross*, 373 F. Supp. 2d at 733; *Masch v. Barnhart*, 406 F.

---

[7] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  SSR 96-7p, Introduction; *see also Cross*, 373 F. Supp. 2d at732.

Supp.2d 1038, 1046 (E.D. Wis. 2005).

The following reflects a portion of the ALJ's credibility analysis:

In addition to the general lack of objective evidence to support her subjective complaints, other considerations weigh against the claimant's overall credibility. For example, at one point, Ms. Black stated that she stopped working in January 2003 because she went to jail. (1E/2) Later, she indicated that she stopped working in January 2003 because she had a bowel procedure with chronic diarrhea and she could no longer work. (7E/2) Then, she stated that she lost her job when she went to prison. (23F/3) At the hearing, she testified that she stopped working because she was asked to leave because she was in the bathroom most of the day. (Hearing) Based upon the foregoing, Ms. Black has provided conflicting information regarding why she stopped her past work and such conflicts weigh against her credibility.

Then, when questioned about why Ms. Black uses a wheelchair, she indicated that the wheelchair was prescribed in 2005. (10E/12) While there is a record that shows Ms. Black was prescribed a wheelchair in 2005, that prescription was for one year only and for long distances while she was in prison. (3F/26-27) There is also a note that a wheelchair and walker were prescribed to Ms. Black on October 25, 2005, but only after her request. (26F/14-15) Moreover, those items appear to have been prescribed because of osteoarthritis and Ms. Black was encouraged to lose weight and continue physical therapy. (26F/15) At the hearing, she stated that the wheelchair was prescribed in 2008 by a doctor in the rheumatology department of Ohio State University Hospital. (Hearing) There is no record of this prescription. She requested a prescription for a wheelchair in October 2009. There is no indication that the doctor actually wrote one. (44F/14) Lastly, she stated that she was prescribed the wheelchair due to connective tissue disease and osteoarthritis. However, her doctor noted that she did not have connective tissue disease. (19F/4-5) In addition, her doctor noted that although she reported a history of osteoarthritis, she did not supply the records to support the history of diagnosis. (26F/7) X-rays of the hip on December 9, 2004, showed no abnormalities. (6F/15) Further, an x-ray from October 11, 2010, indicated negative findings for osteoarthritis in her right knee. (62F/1) In addition, she tested negative for rheumatoid factor. (22F/5) X-rays of right knee, pelvis and lumbar spine taken in October 23, 2009, likewise were negative for arthritis and were otherwise unremarkable. (47F/11-14) Dr. Wang indicated that Ms. Black uses a wheelchair and walker because of mixed connective disease, fibromyalgia and COPD with FEW-1 of 44%. (32F/17) However, it appears that this information is based upon Ms. Black's reports because the medical record contradicts these findings. (19F/4-5, 29F/5) Moreover, she reported on January 28, 2010, that she was in a wheelchair because she was having difficulty with her right leg. (51F/7) Again, these inconsistencies weight [sic] against the claimant's credibility.

(Tr. 26-27)  The ALJ, in four additional paragraphs, detailed other inconsistent statements Black made to physicians reporting diseases without supporting medical documentation and major inconsistencies in her stated criminal history. (Tr. 27.)  The ALJ thoroughly discussed the reasons why she found Black not credible, concluding that Black's subjective complaints did not support a further reduction in the RFC calculation.

### *Nonexertional Impairments*

15

Black also contends that the ALJ failed to include nonexertional limitations in the hypothetical question to the VE and in the RFC analysis.  Specifically, she argues that the hypothetical did not adequately accommodate her moderate deficiencies found by Mr. Stephen Thomas, LIST, in maintaining attention and concentration for extended periods of two hour segments, dealing with the public, relating to co-workers, interacting with supervisors, and relating predictably in social situations.  (Doc. No. 14 at 15, *citing* Tr. 980-981.)  Black also avers that Mr. Thomas' opinion is consistent with the opinion of a consultative examiner, James Lyall, M.D., that Black was moderately limited in her ability to relate to others, including coworkers and supervisors, and her ability to withstand the stress and pressures associated with day-to-day work activity.  *Id.*, *citing* Tr. 851.  Black claims the ALJ gave significant weight to their opinions, but then ignored them in presenting the hypothetical question to the VE and in formulating the RFC.  The Commissioner maintains that the hypothetical question appropriately relied upon the mental functioning capacity offered by the state agency psychologist, and that Black's hearing testimony did not suggest that she was more limited.  (Doc. No. 14-15.)

James M. Lyall, Ph.D., a consultative psychologist, evaluated Black on January 26, 2009, assessing major depressive disorder, recurrent, post-traumatic stress disorder (based upon reports of childhood abuse), and personality disorder mixed with antisocial and paranoid features.  (Tr. 850.)  He found Black to be mildly impaired in understanding and following instructions; moderately impaired in relating to supervisors and co-workers, maintaining attention, and withstanding work stress.  (Tr. 851.)

In February, 2009, Tasneem Kahn, Ed.D., a state agency psychologist, prepared a mental residual functional capacity ("RFC") assessment relying on Dr. Lyall's report.  Dr. Kahn noted that Black retained the capacity to learn and perform simple repetitive tasks in a routine and predictable environment where contact with others was superficial and occasional.  (Tr. 854.) He concluded that Black was moderately limited in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace.  (Tr. 866.)

As to nonexertional restrictions, the hypothetical indicated:

Also, the work the claimant can perform is limited to simple, routine, and repetitive

16

tasks performed in a work environment free of fast paced production requirements, involving only simple, work related decisions, and routine work place changes. She would have superficial and no direct interaction with the public, and only occasional interaction with coworkers.

(Tr. 21.)

The ALJ discussed Black's moderate mental limitations as follows:

Turning to her mental health impairments, Ms. Black reported a history of posttraumatic stress disorder based upon past abuse and general anxiety disorder. (12F) On April 13, 2009, she underwent a mental health examination. Based upon the examination, she was diagnosed with major depressive disorder, recurrent, moderate and posttraumatic stress disorder along with a personality disorder, cluster B. However, she was assigned a Global Assessment of Functioning Score of 60, which indicates only moderate symptoms. (32F/10, DSM-IV) Her course of treatment included medication and she was told about the importance of therapy. (32F/11) She reported on June 4, 2009, that her mood was stabilizing with her medications and she was feeling relatively well. She continued with individual therapy 1-2 times per month. (38F, 39F, 51F, 53F) She reported on May 20, 2010, that overall she feels like her mood is better. (51F/1) In July 2010, she reported that her anxiety was controlled. (53F/1) At the hearing, Ms. Black testified that she gets along with people and is very personable. (Hearing) This is a marked improvement from her prior description of being "snappy" and arguing with people. (23F/4) As such, it appears that the therapy sessions and medications are generally effective in controlling her symptoms.

\* \* \*

On January 26, 2009, Ms. Black underwent a State consultative mental health examination with James M. Lyall, Ph.D. At the examination, Ms. Black stated that she has flashbacks from her childhood and crying spells. She also reported two prior suicide attempts. She mentioned feeling hopeless and having a poor energy level. (23F/3) However, she reported only some panicky feelings and generalized fear. Based upon the reported symptoms, Dr. Lyall classified Ms. Black with major depressive disorder, recurrent, course currently moderate; posttraumatic stress disorder, personality disorder mixed with antisocial and paranoid features. Moreover, he assigned a Global Assessment of Functioning of 55 (23F/4), which indicates only moderate symptoms. (DSM-IV) Dr. Lyall opined that Ms. Black's ability to relate to others, including co-workers and supervisors, is moderately limited. In addition, her ability to maintain and perform simple repetitive tasks is moderately impaired. Lastly, her ability to withstand stress and pressure associated with day-to-day work is moderately impaired. (23F/5) The undersigned will give the opinion of Dr. Lyall significant weight because it is consistent with his examination findings and the record as a whole. Moreover, his opinion is probative because is [sic] not contradicted elsewhere in the record.

As for other opinion evidence, on February 10, 2009, at the initial stage, and on August 21, 2009, at the reconsideration stage, the State Agency consultants concluded that Ms. Black retains the residual mental functional capacity to learn and perform simple, repetitive tasks in a routine and predictable environment with superficial and occasional contact with others. (24F/3, 40F) The undersigned will give the opinions of these highly qualified psychological professionals and experts in Social Security disability evaluations significant weight because they had the benefit of Ms. Black's longitudinal record and because their opinions are consistent

17

with not only the medical record, but with other opinions in the record.

\* \* \*

On July 16, 2009, Stephen A. Thomas, a Licensed Social Worker, Ms. Black's therapist, opined that Ms. Black retained a fair ability to follow work rules, maintain attention and concentration for extended periods of 2 hour segments, respond appropriately to changes in routine settings, deal with the public, relate to co-workers, interact with supervisors and work in coordination with proximity to others without being unduly distracted or distracting. What is more, she retains a good ability to maintain regular attendance and be punctual within customary tolerance. In addition, she retained a fair ability to understand, remember and carry out simple job instructions. Lastly, Mr. Thomas opined that Ms. Black retained a fair ability to relate predictably in social situations, management of funds/schedules and ability to leave home on her own. (35F/4) The undersigned will give the opinion of Mr. Thomas significant weight because he was Ms. Black's treating therapist and because his opinion is consistent with the medical record and other opinions.

(Tr. 24-25.)

The ALJ calculated Black's RFC regarding nonexertional limitations as follows:

Moreover, the claimant should avoid concentrated exposure to extreme heat or cold, wetness or humidity, environmental irritants such as fumes, odors, dusts, gases, poorly ventilated areas, chemicals or moving machinery and unprotected heights. Lastly, the claimant is limited to simple, routine and repetitive tasks performed in a work environment free of fast paced production requirements that involve only simple work related decisions and routine work place changes, superficial interaction with the public and only occasional interaction with co-workers.

(Tr. 21.)

The state agency experts clearly found moderate limitations in concentration, persistence, and pace. As "highly qualified ... psychologists who are also experts in Social Security disability evaluation," their opinions must be considered by the ALJ. 20 C.F.R. § 416.927(f)(2)(i). The ALJ did consider and accept their opinions. Moderate concentration problems, even if not severe enough under the regulations to meet the listing of impairments for a finding of disability at step three of the Commissioner's sequential evaluation, need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 of that sequence. *Green v. Comm'r of Soc. Sec.*, 2009 WL 2365557, \*9 (E.D. Mich. Jul. 28, 2009). Here, the hypothetical takes into consideration Black's moderate limitations as to pace, concentration and persistence. *See Ball v. Comm'r of Soc. Sec.*, 2011 WL 765978, \*4 (S.D. Ohio Feb. 25, 2011) ("low-stress" jobs defined as those that are "simple, routine and repetitive," and do not involve fast-paced production requirements.)

18

Black further contends that based upon the definition of moderate limitations as functioning between twenty-five to fifty percent of the time,[8] the ALJ should have assessed a limitation that Black would have difficulties with concentration, persistence, or pace at least 20 to 30 percent of the time.[9] (Doc. No. 14 at 16.) The Commissioner responds that the hypothetical was not deficient as there was evidence that Black's moderate limitations would not preclude simple, repetitive work, in settings where contact with others was superficial and occasional. (Doc. No. 15 at 14, *citing* Tr. 854.)

The Sixth Circuit has found that an omission of speed and pace-based restrictions from a hypothetical question is reversible error, and that restrictions to "simple" or "low stress" work do not sufficiently incorporate a claimant's medically established limitations. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516–17 (6th Cir. 2010) (citations omitted). In *Ealy*, the ALJ concluded that the claimant had moderate difficulties with regard to concentration, persistence or pace, but the ALJ failed to provide the vocational expert with a fair summary of those conclusions. *Id*. at 516. Instead, the ALJ only limited the claimant to simple, repetitive tasks and instructions. *Id*. The *Ealy* Court concluded that because the hypothetical inadequately described the claimant's limitations, the vocational expert's testimony did not constitute substantial evidence. *See also Anderson v. Comm'r of Social Sec.,* 2011 WL 335059, at *10-11, fn. 6 (S.D. Ohio Jan. 4, 2011); *Whack v. Astrue*, 2008 WL 509210 at *8 (E.D. Pa. Feb. 26, 2008) (citing cases for the proposition that hypothetical restrictions of "simple" or "low-stress" work do not sufficiently incorporate the claimant's medically established limitations where claimant has moderate deficiencies in concentration, persistence or pace). In the instant case, however, the hypothetical question accounted for Black's concentration difficulties by limiting her to "simple, routine, and repetitive tasks performed in a work environment free of fast paced production requirements, involving only simple, work related decisions, and routine work place changes." (Tr. 73.) The

---

[8]*See Johansen v. Comm'r*, 314 F.3d 283 (7th Cir. 2002).

[9]*See Green v. Comm'r*, 2009 WL 2365557, *10 (E.D. Mich. Jul. 28, 2009) (moderate limitations defined as "anything less than 20%-30% of the time."

19

ALJ also included "superficial and no direct interaction with the public, and only occasional interaction with coworkers."  *Id.*  The RFC paralleled the hypothetical, restricting Black from fast-paced production requirements and mandating "only simple work related decisions and routine work place changes, superficial interaction with the public and only occasional interaction with co-workers."  (Tr. 21.)

### Sentence Six Remand

Black further contends that remand is proper so that medical evidence obtained after the unfavorable decision may be considered.  (Doc. No. 14 at 18-19.)  Black submitted additional evidence to the Appeals Council including: (1) treating physician, Dr. Rajan's prescription for a powered wheelchair (Tr. 1309); (2) a nurse's assessment for home health care services dated December 31, 2010, noting that Black needed assistance with grooming, dressing, and bathing (Tr. 1423-1436); and, (3) a nurse's physical assessment on March 4, 2011, reporting that Black did not ambulate, used oxygen nightly, and experienced incontinence and toileting issues.  (Tr. 1412.)  Black contends that based upon this new evidence, remand is necessary.  The Commissioner argues that the requirements of a sixth sentence remand have not been met.  (Doc. No. 15 at 15.)

A sentence six remand is appropriate only where the evidence presented is new and material, and good cause existed for not presenting the evidence in the prior proceeding.  42 U.S.C. § 405(g).  Evidence is new only if it was not in existence or unavailable during the administrative proceeding.  *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  Evidence is "material" for purposes of sentence six remand if it is time-relevant, *i.e.*, relates to the period on or before the date the ALJ rendered his decision.  *Id; see, e.g., Jones v. Comm'r of Soc. Sec*., 336 F.3d 469, 478 (6th Cir. 2003).  Also, evidence is "material" only if there is a reasonable probability that the ALJ would have reached a different conclusion if the evidence had been considered.  *Ferguson,* 628 F.3d at 276; *Foster*, 279 F.3d at 358.  Good cause exists where the failure to present the evidence during the administrative proceeding was reasonably justified.  *Ferguson,* 628 F.3d at 276; *Foster*, 279 F.3d at 357.  The claimant bears the burden of establishing that remand is appropriate.  *Id*.

20

Black's home health services and powered wheelchair prescription were not new and material evidence. The ALJ addressed in her decision the inconsistencies in Black's use of a wheelchair. (Tr. 26-27.) Evidence that Black was assisted by a home health aide since May, 2010 was presented at the hearing. (Tr. 59-62.) Furthermore, at the hearing the VE identified the sedentary occupations of document preparer and assembler. (Tr. 75.) Upon cross-examination, the VE stated that the use of a wheelchair would not affect the sedentary jobs identified. (Tr. 78.) Moreover, the Appeals Council reviewed the additional medical evidence, but concluded that it did not contain clinical or laboratory information to support a finding of disability. (Tr. 2.)

Because Black's additional evidence is neither new nor material, it is unnecessary for the Court to further analyze the requirement of good cause. Black has offered no valid explanation for her delay in supplementing the record, other than to argue that the ALJ issued her decision less than a week after the hearing date. (Doc. No. 14 at 19.) The record reflects, however, that at the conclusion of Black's hearing, counsel affirmatively told the ALJ that the record was complete. (Tr. 42.)

### VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is affirmed.

IT IS SO ORDERED.


s/ Greg White_____
United States Magistrate Judge

Date:    September 28, 2012

21